1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO NUNEZ,<br><br>                    Plaintiff,<br>v.<br><br>C/O F. Ramirez,<br><br>                    Defendant. | Case No. 09cv413-WQH (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF PLAINTIFF'S COMPLAINT** |

   This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.

   Eduardo Nunez (hereinafter "Plaintiff"), a prisoner currently incarcerated at Centinela State Prison in Imperial, California, is proceeding <u>pro se</u> and <u>in forma pauperis</u> with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Doc. No. 1. Plaintiff claims his First Amendment (Count One) and Eighth Amendment (Count Two) constitutional rights were violated by Correctional Officer F. Ramirez (hereinafter "Defendant") during an incident on May 12, 2007. <u>Id.</u>

   In the instant Motion to Dismiss Count One of Plaintiff's Complaint, filed on July 28, 2009, Defendant asserts that Plaintiff

1   fails to allege any facts to show that his speech was protected or to
2   support a retaliation claim.  Doc. No. 6 at 2.  As such, Defendant
3   argues that Plaintiff does not state an actionable section 1983 claim
4   for a violation of his First Amendment right to freedom of speech.  Id.
5   Plaintiff filed an Opposition on August 31, 2009.  Doc. No. 9.
6   Defendant did not file a reply.  This Court found the matter appropriate
7   for decision on the papers and without oral argument pursuant to Local
8   Rule 7.1(d)(1).  Doc. No. 7.

9        This Court has considered the Complaint, Defendant's Motion to
10  Dismiss ("Def.'s Mem."), Plaintiff's Opposition ("Pl.'s Opp.") and all
11  supporting documents submitted by the parties.  For the reasons set
12  forth below, this Court **RECOMMENDS** that Defendant's Motion to Dismiss
13  Count One of Plaintiff's Complaint be **GRANTED.**

14                        **FACTUAL BACKGROUND**

15       Plaintiff alleges that while standing with a group of inmates in
16  the prison "A" Yard on May 12, 2007, he was confronted by Defendant and
17  four other correctional officers. Complaint at 3.  Defendant, using
18  profanity, accused Plaintiff's group of drinking illegally manufactured
19  alcohol in the facility.  Id.  Plaintiff replied, "If you saw who was
20  drinking why don't you address that person instead of disrespecting
21  everybody." Id.  Plaintiff and Defendant then exchanged a series of
22  insults in which they called each other "stupid." Id.

23       Thereafter, one of the officers present, Sergeant Centeno, told
24  Plaintiff to "strip out" for an unclothed body search. Id.  Following
25  the Sergeant's orders, Defendant placed handcuffs on Plaintiff and
26  Sergeant Centeno ordered Defendant to take Plaintiff to the "program
27  office." Id.  Defendant began to walk with Plaintiff and asked Sergeant
28  Centeno, "To the program office?"  Id.  Sergeant Centeno replied, "Yes."

1    <u>Id.</u>   Defendant asked Sergeant Centeno again, "To the program office?"

2    <u>Id.</u>   Plaintiff claims the Sergeant did not audibly respond.  <u>Id.</u>

3    Defendant directed his question to the Sergeant for a third time, "To

4    the program office?" <u>Id.</u>   Plaintiff then said, in Spanish, "Ya

5    mamasela." <u>Id.</u>

6         Plaintiff claims Defendant immediately looked over his shoulder and

7    yelled, "Do not strike me! Get down!" <u>Id.</u>  Defendant pulled Plaintiff

8    to the ground and began grinding his face into the floor.   <u>Id.</u>

9    Plaintiff crossed his legs to demonstrate that he was not resisting.

10   <u>Id.</u>  The brutality stopped when Lieutenant Caldwell arrived at the scene

11   and ordered those present to put on latex gloves because Plaintiff was

12   bleeding from the mouth.  <u>Id.</u> at 4.  Plaintiff was cleaned up, placed in

13   leg irons, and escorted to the medical office.  <u>Id.</u>   Following his

14   medical evaluation, Plaintiff described the incident in a videotaped

15   interview.  <u>Id.</u>

16        According to Plaintiff, Defendant's alleged conduct resulted in a

17   denial of his federal constitutional rights to freedom of speech and

18   freedom from cruel and unusual punishment.  Complaint at 4-6.  Plaintiff

19   describes his pursuit of administrative relief as follows:

20       First I wrote a staff complaint. It was granted in part. Not
         satisfied, I sent it to Sacramento 3rd level – it was denied
21       but it was not returned to me.  I was found guilty of the Rule
         Violation Report.  On appeal, the Rule Violation Report got
22       reissued to be reheard (3 times).  On the fourth time, the
         charges were dismissed.  I was released from Administrative
23       Segregation after 8 months of punishment.

24   <u>Id.</u> at 7.

25                    **DEFENDANT'S MOTION TO DISMISS**

26   **A.   Legal Standard**

27        Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants

28   seek dismissal of Count One of Plaintiff's Complaint on the grounds that

                                  3                         09cv0413-WQH (BLM)

Plaintiff fails to state a claim upon which relief can be granted. Def.'s Mem. A Rule 12(b)(6) motion tests the legal sufficiency of a plaintiff's claims. Fed.R.Civ.P. 12(b)(6). Accordingly, the "focus of any Rule 12(b)(6) dismissal . . . is the complaint." <u>Schneider v. California Dep't of Corrs.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). When reviewing a Rule 12(b)(6) motion, the court may consider the facts alleged in the complaint and documents properly attached to it. See <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). The court also may consider documents the plaintiff's complaint necessarily relies on and "whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001). However, the court "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." <u>Schneider</u>, 151 F.3d at 1197 n.1 (emphasis in original).

For purposes of a Rule 12(b)(6) motion, the court must accept as true all material factual allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. See <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004). When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988). This rule of liberal construction is "particularly important" in civil rights cases. <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992). However, the court is not permitted to "supply essential

1  elements of the claim that were not initially pled." <u>Ivey v. Bd. of</u>
2  <u>Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).
3  "Vague and conclusory allegations of official participation in civil
4  rights violations are not sufficient to withstand a motion to dismiss."
5  <u>Id.</u>

6       Pursuant to Rule 8(a), a complaint must contain "a short and plain
7  statement of the claim showing that the pleader is entitled to relief
8  ..."   Fed.R.Civ.P. 8(a).   "Such a statement must simply 'give the
9  defendant fair notice of what the plaintiff's claim is and the grounds
10 upon which it rests.'" <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512
11 (2002).    Detailed  factual  allegations  are  not  required,  but
12 "[t]hreadbare recitals of the elements of a cause of action, supported
13 by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, ---
14 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v.</u>
15 <u>Twombly</u>, 550 U.S. 544, 555 (2007)).   A Plaintiff must set forth
16 "sufficient factual matter, accepted as true, to 'state a claim that is
17 plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550
18 U.S. at 570).   While factual allegations are accepted as true, legal
19 conclusions are not.   <u>Id.</u>

20      If the court finds that a complaint has failed to state a claim,
21 dismissal may be with or without leave to amend. <u>Lopez v. Smith</u>, 203
22 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).   A court may consider
23 factual allegations outside of the complaint in determining whether to
24 grant leave to amend. <u>See</u> <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th
25 Cir. 2003).   However, a <u>pro se</u> complaint may not be dismissed without
26 leave to amend unless "it is absolutely clear that the deficiencies of
27 the Complaint could not be cured by amendment." <u>Karim-Panahi</u>, 839 F.2d
28 at 623 (citations and internal quotations omitted); <u>see also</u> <u>Lopez</u>, 203

1 F.3d at 1130 (court should not dismiss complaint without leave to amend
2 "unless it determines that the pleading could not possibly be cured by
3 the allegation of other facts") (citation and internal quotations
4 omitted).  A court may also dismiss a complaint without leave to amend
5 when amendment would be futile.  McQuillion v. Schwarzenegger, 369 F.3d
6 1091, 1099 (9th Cir. 2004).

7 **B.   Plaintiff's First Amendment Claim (Count 1)**

8      Plaintiff asserts that the May 12, 2007 incident described above
9 violated his First Amendment right to free speech.  Complaint at 3-4.
10 Defendant argues that Plaintiff's First Amendment claim fails because he
11 "does not specify what the protected speech is," nor does he "put forth
12 any facts that actually allege that Ramirez prevented him from
13 exercising his freedom of speech."  Def.'s Mem. at 4.  Defendant also
14 argues Plaintiff's claim fails because Defendant's actions "reasonably
15 advanced legitimate penological goals" as Plaintiff was suspected of
16 drinking in violation of the prison's rules.  Id. at 5-6.  In his
17 Opposition, Plaintiff maintains that his statement, "If you saw who was
18 drinking, why don't you address that person instead of disrespecting
19 everybody," is protected speech.  Pl.'s Opp at 2.  Because he was
20 punished as a result of that speech, Plaintiff argues that his First
21 Amendment rights were violated.  Id.

22      The First Amendment guarantees that "Congress shall make no law...
23 abridging the freedom of speech..." U.S. Const. Amend. 1.  It is well
24 settled that "convicted prisoners do not forfeit all constitutional
25 protections by reason of their conviction and confinement in prison."
26 Bell v. Wolfish, 441 U.S. 520, 545 (1979).  However, "[l]awful
27 incarceration brings about the necessary withdrawal or limitation of
28 many privileges and rights, a retraction justified by the considerations

1  underlying our penal system." Id. at 545-46 (internal citations
2  omitted).   Accordingly, a prisoner's First Amendment rights are
3  "necessarily limited by the fact of incarceration, and may be curtailed
4  in order to achieve legitimate correctional goals or to maintain prison
5  security." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).

6       In order to state a cognizable First Amendment free speech claim,
7  Plaintiff must plead that his speech was constitutionally protected,
8  that Defendant's actions would chill an ordinary person from continuing
9  in that activity, and that Defendant's actions were motivated by his
10 constitutionally protected speech.   Mendocino Environmental Center v.
11 Mendocino County, 192 F.3d 1283, 1300-1301 (9th Cir. 1999).   In his
12 Complaint, Plaintiff does not allege that he engaged in protected speech
13 nor does he allege that Defendant prohibited him from exercising his
14 free speech rights.   Plaintiff attempts to correct the first omission by
15 claiming in his opposition that his statements were protected by the
16 First Amendment.   Pl.'s Opp at 2.   Even if that were a permissible way
17 to augment the complaint,[1] the derogatory and challenging remarks
18 Plaintiff directed toward Defendant cannot properly be characterized as
19 protected speech.

20      The First Amendment protects a wide range of activity in the prison
21 context, including the right to file grievances against prison
22 officials.   Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).
23 However, protests and complaints that involve a direct confrontation
24 with prison officials, such as Plaintiff's confrontation with Defendant,
25 enjoy limited constitutional protection because such behavior may

26 ───────────────

27      [1]A court "may not look beyond the complaint to a plaintiff's moving papers, such
   as a memorandum in opposition to a defendant's motion to dismiss," to find facts and
   allegations supporting the claim.   Schneider, 151 F.3d at 1197 n.1 (emphasis in
28 original).   All of the required facts must be alleged in the complaint and the
   documents properly attached to it.   Hal Roach Studios, 896 F.2d at 1555 n.19.

1  present the danger of a disturbance.  <u>See, e.g.</u>, <u>Lockett v. Suardini</u>,

2  526 F.3d 866, 874 (6th Cir. 2008) (prisoner's act of calling hearing

3  officer a "foul and corrupted bitch" not protected speech); <u>Smith v.</u>

4  <u>Mosley</u>, 532 F.3d 1270, 1277 (11th Cir. 2008) (prisoner's "false and

5  insubordinate remarks" not protected speech); <u>Garrido v. Coughlin</u>, 716

6  F.Supp.98, 99-101 (S.D.N.Y. 1989) ("verbal confrontation" of officers

7  over their treatment of another inmate not protected conduct); <u>Franklin</u>

8  <u>v. State of Oregon</u>, 563 F.Supp.1310, 1326 (D.Or. 1983) (First Amendment

9  does not extend to "use of expletives" directed toward a guard), <u>aff'd</u>

10 <u>in part and rev'd in part</u>, 795 F.2d 1221 (9th Cir. 1984); <u>Pollard v.</u>

11 <u>Baskerville</u>, 481 F.Supp.1157, 1160 (E.D.Va. 1979) (accusation that guard

12 brought in contraband not constitutionally protected speech); <u>Riggs v.</u>

13 <u>Miller</u>, 480 F.Supp.799, 804 (E.D.Va. 1979) ("bickering, argumentative

14 conversation" does not rise to the "lofty position of constitutionally

15 protected speech"); <u>Craig v. Franke</u>, 478 F.Supp.19, 21 (E.D.Wis. 1979)

16 (accusation that prison official was drunk not protected speech); <u>Durkin</u>

17 <u>v. Taylor</u>, 444 F.Supp.879, 881-83 (E.D.Va. 1977) (statement that "I am

18 tired of chickenshit rules" not protected speech).  The California Code

19 of Regulations acknowledges this concern and explicitly prohibits such

20 behavior:

21        Inmates, parolees and employees will not openly display
          disrespect or contempt for others in any manner intended to or
22        reasonably likely to disrupt orderly operations within the
          institutions or to incite or provoke violence.
23

24 Cal. Code Regs., tit 15, § 3004(b).  The Court finds this concern

25 especially acute where, as here, other inmates were present because

26 prison officials have a strong interest in "preserving institutional

27 order and discipline." <u>Barnett v. Centoni</u>, 31 F.3d 813, 815-16 (9th

28 Cir. 1994).  Accordingly, Plaintiff's statements, as set forth in the

1  Complaint, do not constitute constitutionally protected speech and the

2  Complaint fails to state a First Amendment free speech claim.

3      Alternatively, and with liberal construction, Plaintiff's Complaint

4  could be construed to assert a First Amendment claim for retaliation.

5  Complaint at 3-4.  Specifically, Plaintiff is asserting that Defendant

6  handcuffed him and removed him to the program office in response to

7  Plaintiff's first statement and physically assaulted him in response to

8  a subsequent statement.  Id.  Allegations of retaliation against a

9  prisoner's First Amendment right to freedom of speech may support a

10  section 1983 claim.  See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.

11  1985).  As the Ninth Circuit explained in Rhodes v. Robinson, 408 F.3d

12  559, 567-568 (9th Cir. 2005):

13      Within the prison context, a viable First Amendment
        retaliation entails five basic elements: (1) An assertion that
14      a state actor took some adverse action against an inmate (2)
        because of (3) that prisoner's protected conduct, and that
15      such action (4) chilled the inmate's exercise of his First
        Amendment rights, and (5) the action did not reasonably
16      advance a legitimate correctional goal.

17  Id.

18      To properly state a First Amendment retaliation claim, therefore,

19  Plaintiff must first plead facts showing that he engaged in protected

20  speech.  Here, Plaintiff alleges that he was placed in handcuffs in

21  retaliation for his "protected" statement "If you saw who was drinking,

22  why don't you address that person instead of disrespecting everybody."

23  Complaint at 3; Pl.'s Opp at 2.  As explained above, this statement does

24  not amount to protected speech.  Moreover, even if Plaintiff's statement

25  was protected, he does not adequately plead a connection between the

26  protected statement and Defendant's actions.  In other words, Plaintiff

27  does not allege that he was punished "because of" his protected statement

28  or that Defendant's conduct chilled the exercise of his constitutional

1   rights.  Finally, Plaintiff fails to allege that Defendant's conduct did

2   not reasonably advance a legitimate correctional goal and, in fact, the

3   Complaint indicates that Defendant had a legitimate correctional reason

4   for disciplining Plaintiff as he was suspected of drinking alcohol in

5   violation of the prison's rules and regulations.  Complaint at 3.

6        Plaintiff also alleges that he was pulled to the ground and beat up

7   after he said, in Spanish, "Ya mamasela."  While neither party provides

8   a translation of this term, the way it was used, as described by

9   Plaintiff in his Complaint (<u>id.</u>), indicates that it does not constitute

10  protected speech for the reasons explained above.  In any event,

11  Plaintiff has failed to set forth sufficient facts in his Compliant to

12  establish that it did constitute protected speech.  Additionally,

13  Plaintiff does not allege that Defendant's conduct chilled his First

14  Amendment rights, or that the conduct did not reasonably advance a

15  legitimate correctional goal.[2]  <u>Rhodes</u>, 403 F.3d at 569 ([A]llegations

16  that [an inmate's] First Amendment rights were chilled, though not

17  necessarily silenced, is enough to perfect [a] claim.); <u>Pratt v. Rowland</u>,

18  65 F.3d 802, 806 (9th Cir. 1995) (finding that the prisoner bears the

19  burden of pleading and proving absence of legitimate correctional goal

20  for the conduct of which he complains).  Accordingly, Plaintiff fails to

21  adequately allege a constitutional claim for retaliation.

22       Because Plaintiff does not sufficiently allege a First Amendment

23  free speech or retaliation claim, the Court **RECOMMENDS** that Defendant's

24  Motion to Dismiss Count One of Plaintiff's Complaint be **GRANTED.**

25

26       [2]Whether or not Defendant used excessive force in disciplining Plaintiff is a
    different question and one more appropriately analyzed under the Eighth Amendment.

27  Indeed, based on the same set of facts, Plaintiff claims cruel and usual punishment in
    violation of the Eighth Amendment.  Plaintiff may proceed with this claim as Defendant
    appears to concede that it was properly pled.

28

                                    10

1  Plaintiff's Complaint contains detailed information regarding the
2  statements that were made by Plaintiff and none of them constitute
3  protected speech.   Accordingly, any amendment would be futile and the
4  Court therefore **RECOMMENDS** that the dismissal be **with prejudice.**  Cahill
5  v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996) (leave to
6  amend should not be granted where to do so would be futile).

7                                **CONCLUSION**

8       For the foregoing reasons, **IT IS RECOMMENDED** that the District Court
9  **GRANT WITH PREJUDICE** Defendant's Motion to Dismiss Count One.

10      **IT IS HEREBY ORDERED** that any written objections to this Report must
11 be filed with the Court and served on all parties **no later than  December**
12 **3, 2009**.   The document should be captioned "Objections to Report and
13 Recommendation."

14      **IT IS FURTHER ORDERED** that any reply to the objections shall be
15 filed with the Court and served on all parties no later than **December 23,**
16 **2009.**  The parties are advised that failure to file objections within the
17 specified time may waive the right to raise those objections on appeal
18 of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.
19 2007).

20      **IT IS SO ORDERED.**

21

22 DATED:  November 12, 2009

23                              _Barbara L. Major_

24                              BARBARA L. MAJOR
                                United States Magistrate Judge
25

26

27

28

11                                                    09cv0413-WQH (BLM)