1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO NUNEZ,<br><br>                              Plaintiff,<br><br>          v.<br><br>C/O F. RAMIREZ;<br><br>                              Defendants. | Civil No.    09-CV-413-WQH (BGS)<br><br>**REPORT AND RECOMMENDATION RE:<br>DEFENDANTS' MOTION TO DISMISS<br>PLAINTIFF'S FIRST AMENDED<br>COMPLAINT**<br><br>**[Doc. Nos. 39, 48]** |

## I.

### PROCEDURAL BACKGROUND

Plaintiff Eduardo Nunez ("Plaintiff"), a state prisoner proceeding *pro se*, brought this action under 42 U.S.C. § 1983.  Plaintiff was granted leave and filed a First Amended Complaint ("FAC") on February 25, 2011.  (Doc. Nos. 36-37.)   On March 14, 2011, Defendant F. Ramirez ("Ramirez") filed a motion to dismiss the FAC.  (Doc. No. 39.)  On May 26, 2011, Defendants Wagner, Centeno, and Lieutenant Caldwell (collectively "Defendants") filed a motion to dismiss the FAC.  (Doc. No. 48.)  On August 2, 2011, Plaintiff filed an opposition to Defendants' motion to dismiss the FAC.  (Doc. No. 50.) Pending before the Court are Defendants' 12(b)(6) motions to dismiss Plaintiff's FAC for failure to state a claim.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation (R&R). For the reasons set forth below, the Court **RECOMMENDS** that Defendants' motions to dismiss be **GRANTED IN PART AND DENIED IN PART**.

## II.

### PLAINTIFF'S FACTUAL ALLEGATIONS

At all relevant times, Plaintiff was incarcerated at Centinela State Prison ("Centinela").  (FAC at 4.)  In his FAC, Plaintiff alleges the following supporting facts:

On May 12, 2007, Plaintiff was standing with a group of inmates in the prison "A" Yard.  (FAC at 4.)  While standing in the group, Plaintiff was confronted by Defendants and one other unknown correctional officer.  (*Id.*)  Defendant Ramirez, using profanity, accused Plaintiff's group of drinking illegally manufactured alcohol. *Id.*  Plaintiff replied, "If you saw who was drinking why don't you address that person instead of disrespecting everybody." *Id.*  Plaintiff and Ramirez then exchanged a series of insults in which they called each other "stupid." *Id.*  Thereafter, Defendant Centeno, told Plaintiff to "strip out" for an unclothed body search. *Id.*  Plaintiff fully cooperated with the search.  *Id.*  Although Defendants did not find any alcohol, Plaintiff was cuffed and taken to the program office.  *Id.* at 4-5.

While being escorted to the program office Plaintiff said to Ramirez,  "Ya mamasela." *Id.* at 5.  In response, Ramirez immediately looked over his shoulder and yelled, "Do not strike me! Get down!" *Id.* Ramirez pulled Plaintiff to the ground.  *Id.*  Plaintiff crossed his legs in order to show that he was not resisting but Ramirez began grinding his face into the floor.  *Id.*  As a result, Plaintiff's lip was injured.  *Id.*

Lieutenant Caldwell arrived and after seeing the blood coming from Plaintiff's mouth he ordered the officers to put on latex gloves. *Id.*  Shortly thereafter Plaintiff's wound was cleaned. *Id.*  Because Plaintiff was accused of "battery on a peace officer," he was placed in leg irons and escorted to the medical office. *Id.* In the medical office, Plaintiff received a "medical report of injury or unusual occurrences." *Id.*  The report established that Plaintiff was not under the influence of alcohol or any other unusual substance.  *Id.*  Plaintiff also explained to Lt. Caldwell that the videotape from the yard would prove that he was innocent.  *Id.*  Lt. Caldwell responded: "Don't worry about it Nunez, Morris told me you didn't hit Ramirez."  *Id.*

Thereafter, Plaintiff was escorted to A-5 Administrative Segregation ("Ad Seg"). *Id.* While en route to Ad Seg, Centano asked Plaintiff, "Who were the homies you were talking to?" *Id.* Plaintiff replied: "I told you, that's your job." *Id.*

When Plaintiff was released from Ad Seg he was told that his property was lost. *Id.* at 6. Ramirez managed property at the time Plaintiff's property went missing. *Id.* And a few days after Plaintiff was released from Ad Seg, Ramirez delivered his quarterly package, but not his property. *Id.*

Plaintiff also claims that months later he was placed back into Ad Seg for the same alleged rules violation. *Id.* at 6. Despite not having any evidence to support a violation, Lt. Caldwell found Plaintiff guilty. *Id.*

Because Plaintiff's central file contains false documents accusing him of battery on a peace officer, Plaintiff has not been able to hold a prison job. *Id.* Plaintiff qualifies for jobs that require inmates to maintain a record clean of violence against staff, yet he continues to be denied these positions. *Id.* Because Plaintiff does not have a job, he only gets the minimum classification points subtracted from his sentence. *Id.* In addition, Plaintiff claims he was denied parole because his psychological report now indicates that he is a moderate risk for violence. *Id.* Plaintiff believes that this is a result of officials reviewing paperwork in his file that recount the false charges regarding the alleged altercation with Ramirez. *Id* at 7.

Plaintiff has exhausted his administrative remedies. *Id.* In addition to requesting monetary damages, Plaintiff also requests injunctive relief. *Id.* at 8.

### III.

#### DEFENDANTS' MOTION TO DISMISS

### A.  Fed. R. Civ. P. 12(b)(6) Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A Rule 12(b)(6) dismissal may be based on either a " 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell*

1   *Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

2   factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3   misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550

4   U.S. at 556, 570).

5          While allegations of material fact are accepted as true and construed in the light most favorable to

6   the nonmoving party, *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the Court need

7   not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See*

8   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 129 S.Ct. at 1949 ("Threadbare

9   recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");

10  *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion

11  couched as a factual allegation"). "The pleading standard Rule 8 announces does not require 'detailed

12  factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me

13  accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

14         Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported

15  by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

16  and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. "The

17  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

18  that defendant has acted unlawfully." *Id.* at 1949. Where a complaint pleads facts that are "merely consistent

19  with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement

20  to relief.'" *Id.*; *Twombly,* 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from

21  conceivable to plausible, [his] complaint must be dismissed").

22         "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

23  reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the

24  plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*,

25  129 S.Ct. at 1949).

26         In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held

27  "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520

28  (1972). Thus, where a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings

liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir. 1988).  "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Sprewell*, 266 F.3d at 988.

**B.  42 U.S.C § 1983 Standard**

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).

Plaintiff alleges that Defendants violated his: (1) right to substantive due process; (2) right to equal protection; (3) right to procedural due process; and (4) right to be free from cruel and unusual punishment. (FAC at 2-3.)  Plaintiff further alleges claims under § 1983 for false arrest and defamation.  (FAC at 3.)

**C.  Violation of Fourteenth Amendment—Due Process Violation for Placement in Ad Seg**

Defendants move to dismiss Plaintiff's due process claim arising out of his placement in Ad Seg. (Memo Ps&As ISO Motion to Dismiss, Doc. Nos. 39-1 at 11, 48-1 at 10.)  Defendants contend that Plaintiff has not alleged a protected liberty interest and that he has not alleged facts describing that he suffered an atypical and significant hardship in light of the ordinary incidents of his incarceration.  (*Id.,* Doc. Nos. 39-1 at 11-12, 48-1 at 10-11.)

**1.    Standard of Review**

The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law."  U.S. CONST. AMEND. XIV.  The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974).  In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest.  *Wilkinson v. Austin*, 545 U.S. 209 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995).  In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner."

*Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection). Segregated confinement, which does not exceed similar confinement "in either duration or degree of restriction," does not "work a major disruption in [a prisoner's] environment." *Id.* at 486. Therefore "discipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. The *Sandin* test requires a case-by-case examination of both the conditions of the prisoner's confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486; *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (plaintiff's placement and retention in prison's special housing unit pending a disciplinary hearing was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life).

Accordingly, under *Sandin*, the Court must determine whether Plaintiff has alleged facts sufficient to show that the ramifications of the time he spent in Ad Seg "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484.

### 2.      Application to Plaintiff's Complaint

Plaintiff alleges insufficient facts to show that an unstated number of days spent in Ad Seg was "atypical and significant." *Id.* In his FAC, Plaintiff does not plead any facts describing the conditions imposed on him during his time in Ad Seg. Rather, Plaintiff complains that Defendants failed to collect and preserve evidence that would have helped him defend himself in the prison disciplinary proceedings. In his opposition to the motions to dismiss, Plaintiff does allege that he was denied visitation privileges while grieving over the death of a family member. But being denied visitation privileges while in Ad Seg does not constitute a liberty interest under *Sandin*. The withdrawal of visitation privileges for a limited period is a regular means of effecting prison discipline and is "not a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (citing *Sandin*, 515 U.S. at 485). Accordingly, the facts as alleged do not indicate that the conditions Plaintiff experienced in Ad Seg were more restrictive than the sentence imposed on him or that he suffered an atypical and significant hardship in light of the ordinary incidents of incarceration. Because Plaintiff has not alleged facts which

1  show that the change in his confinement was a "dramatic departure from the basic conditions" of his

2  confinement, he has not stated a due process claim.

3        Thus, the Court **recommends** that Defendants' Motion to Dismiss Plaintiff's Due Process claim be

4  **GRANTED without prejudice and with leave to amend.**[1]

5        **D.  Violation of Fourteenth Amendment—Equal Protection Clause**

6        Defendants move to dismiss Plaintiff's equal protection claim because Plaintiff has failed to allege

7  any facts to state a plausible claim for discrimination based on race or any other protected ground.  (Memo

8  Ps&As ISO Motion to Dismiss, Doc. Nos. 39-1 at 14, 48-1 at 13.)

9        **1.    Standard of Review**

10        The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny

11  to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

12  all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S.

13  432, 439 (1985); *Shaw v. Reno*, 509 U.S. 630 (1993).  Conclusory allegations of discrimination, however,

14  are insufficient to withstand a motion to dismiss, unless they are supported by facts that may prove invidious

15  discriminatory intent or purpose.  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252,

16  265 (1977).

17        Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that

18  the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v.*

19  *Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted).  "'Discriminatory purpose'. . . implies

20  more than intent as volition or intent as awareness of consequences.  It implies that the decision maker

21  . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,'

22  its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*,  442 U.S. 256, 279

23  (1979).

24        **2.    Application to Plaintiff's Complaint**

25        Plaintiff merely concludes that Defendants discriminated against him because of his race.  But

26  Plaintiff offers no facts to indicate that his race had anything to do with Defendants' decision to issue him

27

28        [1]Before dismissing a pro se litigant's complaint, the court must give opportunity to amend unless the complaint's deficiencies could not be cured by amendment.  *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987).

1   a rules violation report.  At no place in the FAC does Plaintiff state facts tending to show that Defendants

2   treated him differently from the other prisoners because of his race.  Plaintiff argues that because he was

3   the only prisoner investigated for violating the rule against consuming manufactured alcohol, he has an

4   equal protection claim.  But Plaintiff does not identify how race played a role in Defendants' decision not

5   to investigate or cite the other inmates for a rules violation.  Plaintiff has not even identified that he is a

6   different race than the inmates that were not investigated.   In addition, there are no facts to plausibly

7   suggest Defendants *intentionally* discriminated against Plaintiff.  The FAC pleads a bare legal conclusion

8   that stops far short of the line entitling Plaintiff to relief.  *See Iqbal*, 129 S.Ct. at 1950.

9          Accordingly, the Court **recommends** that Defendants' motion to dismiss Plaintiff's equal protection

10  claim be **GRANTED without prejudice and with leave to amend.**

11          **E.  Violation of Procedural Due Process—Deprivation of Property**

12          Defendants move to dismiss Plaintiff's due process claim stemming from his lost property because

13  there is an adequate state law remedy available to California prisoners suffering from negligent or

14  intentional deprivation of property.  (Memo Ps&As ISO Motion to Dismiss, Doc. Nos. 39-1 at 14, 48-1 at

15  13.)

16          **1.        Standard of Review**

17          "[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section

18  1983 if the state has an adequate post deprivation remedy."  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.

19  1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  An adequate state post-deprivation remedy

20  includes a state tort action.  *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986.)  "California Law

21  provides an adequate post-deprivation remedy for any property deprivations."  *Barnett*, 31 F.3d at 817; *see*

22  *also* Cal.Gov't Code §§ 810-895.; *Hamilton v. Cal. Dept. of Corrections*, 2003 WL 22016782, *1 (N.D. Cal.

23  Aug. 8, 2003) (dismissing plaintiff's due process claim for lost property because California law provides

24  an adequate post-deprivation remedy).

25          **2.        Application to Plaintiff's Complaint**

26          Plaintiff's due process claim for deprivation of property is not legally cognizable**.**  Plaintiff does not

27  dispute that he has an adequate remedy at law.  Doc. No. 50 at 2.  Because California provides Plaintiff with

28  a post-deprivation remedy, Defendants did not violate his right to due process.   Thus, the Court

1    **recommends** that Defendants' motion to dismiss Plaintiff's due process claim be **GRANTED with**

2    **prejudice and without leave to amend** because Plaintiff could not amend his complaint to plead facts that

3    would state a claim for relief.

4           **F. Violation of Eighth Amendment—Excessive Force**

5           Defendants seek dismissal on grounds that Plaintiff failed to plead facts to show excessive force was

6    applied when Defendant Ramirez took Plaintiff to the ground in order to place him in handcuffs.  (Def's.

7    P&As ISO Opp'n, Doc. No. 39-1 at 17, Doc. No. 48-1 at 14.)  Defendants argue that Plaintiff's allegations

8    do not support an excessive force claim because Defendant Ramirez used *de minimis* force in order to gain

9    Plaintiff's compliance with an order.  (Def's. P&As ISO Opp'n, Doc. No. 39-1 at 15, Doc. No. 48-1 at 14.)

10   Defendants' analysis of Plaintiff's factual allegations, however, is not accurate.  Plaintiff alleges that he

11   was *already* in handcuffs and being escorted to the program office when Officer Ramirez took him to the

12   ground and injured his lip by grinding his face into the floor.  (FAC at 4-5.)

13          **1.      Standard of Review**

14          When an inmate claims that officials used excessive force, in order to make out an Eighth

15   Amendment claim, the prisoner must demonstrate that officials applied force "maliciously and

16   sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  A

17   prisoner, like Plaintiff, asserting malicious and sadistic use of force need not show that such force

18   caused an "extreme deprivation" or "serious" or "significant" pain or injury to establish a cause of

19   action. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  All that is necessary is proof of more than *de*

20   *minimis* pain or injury. *Id.* at 9.

21          Thus, the objective component of an excessive force claim is less demanding than that necessary

22   for conditions-of-confinement or inadequate medical care claims. The Supreme Court directs courts to

23   balance several factors in determining whether prison officials acted maliciously and sadistically.  The

24   factors originally set out in *Whitley*, include: (1) the need for application of force, (2) the relationship

25   between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible

26   officials," and (4) "any efforts made to temper the severity of a forceful response."  *Hudson*, 503 U.S. at

27   7. (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to

28   be considered in the subjective analysis. *Id.*  In *Hudson*, 503 U.S. at 4, the Supreme Court held that "the

1   use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even]

2   when the inmate does not suffer serious injury." *Id.*  "Injury and force, however, are only imperfectly

3   correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards

4   does not lose his ability to pursue an excessive force claim merely because he has the good fortune to

5   escape without serious injury." *Wilkins v. Gaddy*, —U.S.—, 130 S.Ct. 1175, 1178-79 (2010).

6          In situations involving institutional security, courts afford prison administrators extensive

7   deference in their decisions regarding policies and practices necessary to preserve internal order and

8   discipline. *Hudson*, 503 U.S. at 6.  But when institutional security is not at stake, an official's license to

9   use force is relatively limited. *See id.* at 13 (Stevens, J., concurring in part and concurring in the

10  judgment). In such cases, a plaintiff is not required to prove malicious and sadistic use of force by a

11  defendant.  *See id.*  Rather, a plaintiff's allegations of "unnecessary and wanton infliction of pain" may

12  suffice. *See id.*

13                 **2.      Application to Plaintiff's Complaint**

14         Plaintiff's complaint only alleges that Ramirez used force.  No other defendant is identified as

15  applying any force to Plaintiff.  Specifically, Plaintiff alleges that while he was in handcuffs and being

16  escorted to the program office, Officer Ramirez—without provocation— pulled him to the ground and

17  began grinding his face into the floor.  Plaintiff further claims that he did not resist Ramirez's take

18  down.  The force caused Plaintiff's lip to bleed and required medical attention.

19         As alleged, the force Ramirez used to take Plaintiff to the ground and grind his face into the floor

20  was out of proportion to his legitimate need to escort a restrained  inmate to the program office.

21  Although Plaintiff may have verbally harassed Defendant Ramirez by saying, "Ya mamasela,"

22  responding to a verbal insult with enough physical force to cause bleeding does not appear reasonable

23  under the circumstances.  If Plaintiff's version of events is believed, the incident amounted to a wanton

24  beating in violation of the Eighth Amendment, even though it did not result in serious, lasting injury.

25  *See Hudson*, 503 U.S. at 7 (holding that serious injury is not required) (quoting *Whitley v. Albers*, 475

26  U.S. 312, 321, (1986)); *Whitley,* 475 U.S. at 320 (stating that the infliction of "unnecessary and wanton

27  pain" violates the Eighth Amendment); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (finding

28  that by assaulting Plaintiff during a controlled strip search, the guard deliberately used excessive force

1    that inflicted bodily harm under circumstances where the use of force was an unnecessary and wanton

2    infliction of harm).

3           Taking the facts as alleged, the Court **recommends** that the motion to dismiss Plaintiff's

4    excessive force claim be **DENIED** with respect to Defendant Ramirez.  However, because Plaintiff does

5    not allege any facts to indicate that Defendants Wagner, Centeno, or Caldwell used any force, the Court

6    **recommends** that their motion to dismiss be **GRANTED without prejudice and leave to amend**.

7           **G.  Eighth Amendment Claim—Wrongfully Accused of Rule Violation**

8           Defendants move to dismiss Plaintiff's Eighth Amendment claim arising from wrongful

9    accusations of a serious rules violation.  (Memo Ps&As ISO Motion to Dismiss, Doc. Nos. 39-1 at 17,

10   48-1 at 16.)  Defendants contend that Plaintiff does not have a constitutional right to be free from false

11   accusations.  *Id.*  Inmates are limited to the protections of the due process clause, including written

12   notice of the violation, a written statement of fact-finding, and the right to present witnesses and

13   evidence where it would not be unduly hazardous to institutional safety.  *Id.*  Defendants appear to argue

14   that Plaintiff received all of the process he was due.

15                 **1.      Standard of Review**

16          Prison inmates are "entitled to be free from arbitrary actions of prison officials."  *Wolff,* 418

17   U.S. at 558.  But the protection against arbitrary action is procedural due process.  *Id.*  "[D]isciplinary

18   procedures allow a prisoner a chance to defend against improper or erroneous charges."  *Hanrahan v.*

19   *Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984).  So long as the prisoner receives due process before being

20   deprived of a protected liberty interest, the prisoner receives the protection guaranteed.  *Id.*  And the

21   protections guaranteed are those set forth in *Wolff v. McDonnell*, 418 U.S. 539.  In other words, inmates

22   have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

23   may result in the deprivation of a protected liberty interest."  *Freeman v. Rideout*, 808 F.2d 949, 951

24   (2nd Cir. 1986); *see also Sprouse v. Babock,* 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims

25   based on falsity of charges brought by prison counselor standing alone did not state constitutional

26   claim); *Buckley v. Gomez*, 36 F.Supp. 2d 1216, 1222 (S.D. Cal. 1997), aff'd without opinion on other

27   grounds, 168 F.3d 498 (9th Cir. 1999) (citing *Freeman* and noting courts have held that there is no

28   constitutional right to be free from wrongfully issued disciplinary reports).

1

**2.   Application to Plaintiff's Complaint**

2       Even accepting as true Plaintiff's allegation that Defendants wrongfully accused him of a serious

3   rules violation, and did so with "evil intent to cause psychological harm," Plaintiff does not have a

4   constitutional right to be free from a wrongfully issued rules violation report.  Thus, to the extent

5   Plaintiff seeks to assert a claim against Defendants based on his allegation that the charge for battery on

6   a peace officer was false or fabricated, Plaintiff's claim is insufficient to support a due process violation.

7       The Court **recommends** that Defendants' motion to dismiss Plaintiff's due process claim on the

8   basis of false accusations be **GRANTED without prejudice and with leave to amend**.

9       **H.  False Arrest**

10      Plaintiff also includes a claim for false arrest.  FAC at 3.  Plaintiff's false arrest claim is based on

11  the fact that he was issued a rules violation report for consuming manufactured alcohol despite the fact

12  that evidence of consumption was never produced.  *Id.* at 5.  In his opposition to Defendants' motion to

13  dismiss, Plaintiff further alleges that there was "no probable cause to arrest him."  Doc. No. 50 at 2.

14      **1.   Standard of Review**

15      California Penal Code § 834 defines arrest as: "taking a person into custody, in a case and in the

16  manner authorized by law."  "An arrest may be made by a peace officer or by a private person."  Cal.

17  Penal Code § 834.  "In custody" implies that a person "is detained or kept in the charge or control of

18  another, in some sort of restraint," so that the person "is not free to come and go" at will.  *People v.*

19  *Drake*, 162 Cal. 248, 249 (1912).  A prison inmate, however, is already in custody, thus the conduct of

20  correctional officers in disciplining an inmate for violation of prison rules is not an arrest.  *People v.*

21  *Ragsdale*, 177 Cal. App.2d 676, 678 (1960); *People v. Aguierre*, 181 Cal.App. 2d 577, 580-81 (1960)

22  (finding that it is illogical to say that a prisoner in a state prison, necessarily already in custody, is

23  arrested).

24      Thus, it appears Plaintiff's claim for false arrest is really another means of alleging that he was

25  falsely accused of consuming alcohol and battering an officer.  As addressed above, prisoners have "no

26  constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may

27  result in the deprivation of a protected liberty interest," but they do have "the right not to be deprived of

28  a protected liberty interest without due process of law."  *Freeman*, 808 F.2d at 951; *see also Sprouse*,

1   870 F.2d at 452. Therefore, "[w]hile in no way condoning "trumped up charges" or the use of "falsified

2   documents" in any official proceeding, even the filing of false disciplinary charges is not itself a due

3   process violation, provided the procedural due process requirements of *Wolff* are observed." *Deadmon v.*

4   *Grannis*, No. 06cv1382-LAB (WMC), 2008 WL 595883, *10 (S.D. Cal. Feb. 29, 2008).

5           **2.      Application to Plaintiff's Complaint**

6           First, because Plaintiff was already "in custody" serving a prison term, discipline from

7   correctional officers for violations of prison rules is not an arrest. *Ragsdale*, 177 Cal. App.2 at 678;

8   *Aguierre*, 181 Cal. App.2d at 580-81.  Second, even assuming Plaintiff could be arrested while

9   incarcerated, the facts Plaintiff sets forth establish that a prudent person would believe, under the totality

10  of the circumstances, that because Plaintiff was standing in a group of inmates believed to be drinking

11  manufactured alcohol, there was probable cause to believe Plaintiff was violating a prison rule.

12  Plaintiff's contention that no alcohol was found on him after an unclothed body search does not preclude

13  this conclusion. Although Plaintiff avers that evidence of alcohol consumption was never produced and

14  the medical report taken following Plaintiff's lip injury establishes that he was not under the influence of

15  alcohol, these facts do not negate Defendants' probable cause to cuff Plaintiff and escort him to the

16  program office.  Accordingly, even if Plaintiff was arrested, Defendants had probable cause to do so.

17          Finally, to the extent Plaintiff's false arrest claim stems from his allegation that the battery on a

18  peace officer was charge was never proven, he has "no constitutionally guaranteed immunity from being

19  wrongly or falsely accused of conduct which may result in the deprivation of a liberty interest."

20  *Deadmon*, 2008 WL 595883, * 7.  Similarly, to the extent Plaintiff's false arrest claim stems from the

21  serious rules violation report issued to him based on the unproven allegation regarding alcohol

22  consumption, there is no constitutionally guaranteed immunity from being wrongly or falsely accused of

23  such conduct.  *Id.*

24          The Court recommends that Defendants' motion to dismiss the false arrest claim be **GRANTED**

25  **with prejudice.**

26      **I.  Defamation**

27          Plaintiff also includes a claim for defamation of character.  FAC at 3.  Plaintiff avers that the

28  documents stemming from the false charges remain in his central file and continue to cause him

hardship such as the inability to hold a prison job. *Id.* at 4. Because Plaintiff does not have a job, he only gets the minimum classification points subtracted from his sentence. *Id.* Plaintiff also believes that the defamatory statements contained in his central file resulted in his psychological report indicating that he is a moderate risk for violence. *Id.* at 6. Plaintiff further alleges that he was denied parole based on the psychological report. *Id.*

Defendants move to dismiss the claim on the basis that "damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived on any right, privilege, or immunity secured to him by the Federal Constitution or laws of the United States." (Memo Ps&As ISO Motion to Dismiss, Doc. Nos. 39-1 at 18, 48-1 at 17) (citing *Morey v. Independent School Dist.*, 429 F.2d 428 ( 1969)).

### 1.   Standard of Review

In California, a written defamatory statement is known as libel and is defined as "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Defamation alone does not amount to a constitutional violation, even when done under color of state law, unless it is accompanied by harm to "some more tangible interests." *See Paul v. Davis*, 424 U.S. 693, 701 (1976). A § 1983 plaintiff must show loss of a constitutionally protected property or liberty interest in conjunction with the allegation of injury to reputation. *See Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir.1991), aff'd on this ground on reh'g en banc, 963 F.2d 1220, 1235 n. 6 (9th Cir.) (en banc), cert. denied, 506 U.S. 953 (1992). This has become known as the "stigma-plus" test. *See id.*

There are two ways to meet the stigma-plus test: (1) by showing that the injury to reputation caused the denial of a federally protected right; or (2) by showing that the injury to reputation was inflicted in connection with a federally protected right. *See id.; see, e.g., Stevens v. Rifkin*, 608 F.Supp. 710, 726-27 (N.D.Cal.1984) (plaintiff stated § 1983 claim by alleging that prosecutor disseminated accusations to press in attempt to deprive plaintiff of his 6th Amendment right to impartial jury panel); *id.* at 727 (plaintiff stated § 1983 claim by alleging defamatory statements were made in connection with alleged unconstitutional arrest and prosecution); *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169

1   F.3d 636, 645 (9th Cir. 1999) ("Injuries inflicted 'in connection' with the deprivation of a federal right

2   include defamatory statements concerning an unconstitutional arrest."); *Crowe v. County of San Diego*,

3   13 Fed.Appx. 560, 562 (9th Cir. 2001) (citations omitted).

4     **2. Application to Plaintiff's Complaint**

5      Because Plaintiff contends that Defendants' defamatory statements deprived him of the ability to

6   qualify for certain jobs and to receive parole, he appears to allege that the statements in his central file

7   caused the denial of federally protected right. Plaintiff, however, has not articulated the content of the

8   defamatory statements, has not alleged that his reputation was harmed, and has not stated what federally

9   protected right(s) he was denied.  Although pro se pleadings are liberally construed, *Haines v. Kerner*,

10  404 U.S. 519, 520-21, 92 S.Ct. 594 (1972), conclusory and vague allegations will not support a cause of

11  action. *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). Further, a

12  liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were

13  not initially pled. *Id.*  Even if the Court assumes that the statements in Plaintiff's central file are

14  defamatory, Plaintiff fails to state a claim for relief because he has not alleged anything more than a

15  belief that he may have suffered consequences as a result of allegedly false information in his central

16  file.  In order to state a claim for relief, Plaintiff must either allege that the injury to his reputation

17  caused the denial of a federally protected right, *Cooper,* 924 F.2d at 1532, or that the injury to his

18  reputation was inflicted in connection with a federally protected right.  *Id.*  Plaintiff must also identify

19  the federally protected right affected.

20     Thus, the Court **recommends** that Defendants' motion to dismiss the defamation claim be

21  **GRANTED.**  The Court further recommends that Plaintiff be given the opportunity to amend his

22  complaint in order to cure the defects identified above.

23                             **IV.**

24                       **CONCLUSION**

25     This Report and Recommendation Magistrate Judge is submitted to the United States District

26  Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).  For all of the reasons stated above, the

27  Court recommends the following:

28

1.      Plaintiff's Fourteenth Amendment Due Process claim stemming from his placement in Administrative Segregation be **DISMISSED** without prejudice and with leave to amend;

2.      Plaintiff's Fourteenth Amendment Equal Protection claim be **DISMISSED** without prejudice and with leave to amend;

3.      Plaintiff's Due Process claim regarding his lost property be **DISMISSED** with prejudice;

4.      Plaintiff's Eighth Amendment Excessive Force claim be **DISMISSED** without prejudice as to Defendants Wagner, Centeno and Caldwell.  The Court, however, recommends that Defendant Ramirez's motion to dismiss Plaintiff's excessive force claim be **DENIED**.

5.      Plaintiff's Eighth Amendment claim alleging Defendants falsely accused him of a rules violation be **DISMISSED** without prejudice and with leave to amend;

6.      Plaintiff's claim for false arrest be **DISMISSED** with prejudice;

7.      Plaintiff's claim for defamation be **DISMISSED** without prejudice and with leave to amend.

**IT IS ORDERED** that no later than **December 14, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **14 days** of being served with objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED:  November 14, 2011

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court

09-CV-413 WQH (BGS)